ANN WALSH BRADLEY, J.
¶ 1. Petitioner, Bank of New York Mellon ("the Bank"), seeks review of *27 a published decision of the court of appeals that reversed the circuit court's denial of Shirley Carson's motion to amend a judgment of foreclosure on her former home.[1] She requested that the court find the property to be abandoned and that it order a sale of the property upon expiration of five weeks from the date of entry of the amended judgment. The court of appeals concluded that the circuit court erroneously determined that it was without authority to grant the motion.
¶ 2. The Bank asserts that Wis. Stat. § 846.102 (2011-12)[2], the statute governing foreclosure of abandoned properties, does not require it to sell a property after it obtains a judgment of foreclosure and the redemption period has passed. It maintains that the statute is permissive, not mandatory, and that it cannot be required to sell a property. The Bank further contends that even if the statute does mandate that the Bank sell the abandoned property after the redemption period, it provides no deadline for doing so. Thus, the Bank concludes that it is free to execute on its judgment at any time within five years after rendition of the judgment, and the circuit court is without authority to order it to sell the property at a specific time.
¶ 3. Based on the statute's plain language and context, we conclude that when the court determines that a property is abandoned, Wis. Stat. § 846.102 authorizes the circuit court to order a mortgagee to *28 bring the property to sale after the redemption period. We further conclude, consistent with the purpose of the statute, that the circuit court shall order the property to be brought to sale within a reasonable time after the redemption period. The circuit court's determination of what constitutes a reasonable time should be based on the totality of the circumstances in each case.
¶ 4. In this case, the circuit court did not reach the issue of whether the property had been abandoned. Accordingly, we affirm the court of appeals and remand the cause to the circuit court for such a determination and further proceedings.
I
¶ 5. In 2007, Countrywide Home Loans loaned $52,000 to Carson. As security for the debt, Carson mortgaged her home on Concordia Avenue in Milwaukee, Wisconsin. After Carson defaulted on her payments, Countrywide and Carson entered an agreement modifying the terms of the loan. Subsequently, Carson again defaulted on the loan payments.
¶ 6. The Bank, as trustee for Countrywide, filed a complaint against Carson, seeking a judgment of foreclosure and sale of the mortgaged premises. Attempts to serve Carson at the Concordia Avenue property were unsuccessful. In his affidavit, the process server observed that the house appeared to be vacant. On his first visit he reported that the garage had been boarded, that the snow was not shoveled, there were no footprints in it, and there was no furniture in the house. Notes from his successive visits state that the snow was still not shoveled and there were still no footprints around the house.
¶ 7. Thereafter, the Bank published notice of the foreclosure action in a local newspaper. Carson, *29 who was physically and financially unable to care for the property, did not file an answer or otherwise dispute the foreclosure. In April 2011, BAC Home Loan Servicing, LP, apparently a loan servicer for Countrywide, filed a City of Milwaukee Registration of Abandoned Property in Foreclosure form for the property.[3]
¶ 8. The circuit court entered a judgment in favor of the Bank. It determined that Carson owed the Bank $81,356.59. After acknowledging that the property was not owner occupied, the court directed that the property "shall be sold at public auction under the direction of the sheriff, at any time after three month(s) from the date of entry of judgment." The judgment also enjoined both parties from committing waste on the premises and specified that in the event the property is abandoned by the defendants, the Bank "may take all necessary steps to secure and winterize the subject property."
¶ 9. After the judgment was entered, the Bank did not take steps to secure the property. It was repeatedly burglarized and vandalized. At one point someone started a fire in the garage. Despite an order from the City of Milwaukee Department of Neighborhood Services to maintain the property, the Bank did not do so. Carson received notices of accumulated trash and debris, as well as notices of overgrown weeds, grass, and trees. The City imposed approximately *30 $1,800 in municipal fines on her and she made payments of approximately $25 per month toward the fines.
f 10. By November 2012, more than 16 months after the judgment of foreclosure was entered, the Bank had not sold the property and had no plans to sell it. Carson filed a motion to amend the judgment to include a finding that the property was abandoned and an order that the sale of the premises be made upon expiration of five weeks from the date of entry of the amended judgment, pursuant to Wis. Stat. § 846.102.[4]
¶ 11. In support of her motion, Carson referenced the affidavit from the process server indicating that the house appeared vacant. She produced her own affidavit stating that she had terminated her utility accounts, that the property had been vandalized, that the doors and windows on the house had been boarded, and that the garage had been damaged by fire. She also produced the form the loan servicer filed with the City of Milwaukee registering the premises as an abandoned property, violation notices from the City indicating that there was trash and debris on the property, a copy of the complaint record from the City, and a re-inspection fee letter from the City.
¶ 12. The circuit court denied Carson's motion. It observed that Wis. Stat. § 846.102 did not specifically grant it authority to order the Bank to sell the property *31 at a specific time. It explained "I can't find anywhere in the statute [Wis. Stat. § 846.102] that I have the authority to grant the relief that [Carson is] requesting." The court further noted that the statute contemplates that the redemption period be elected by the mortgagee, not the borrower, and questioned whether a mortgagee could be compelled to execute a judgment when someone else is seeking the order. Accordingly, it stated, "I'm specifically finding that I don't have the authority... so the motion is denied on those grounds."
¶ 13. Carson appealed, arguing that under Wis. Stat. § 846.102 the circuit court did have the authority to order sale of the property upon expiration of the redemption period. The court of appeals agreed with Carson. Bank of New York v. Carson, 2013 WI App 153, ¶ 9, 352 Wis. 2d 205, 841 N.W.2d 573. It determined that "the plain language of the statute directs the court to ensure that an abandoned property is sold without delay, and it logically follows that if a party to a foreclosure moves the court to order a sale, the court may use its contempt authority to do so." Id., ¶ 13. Accordingly, it reversed the circuit court and remanded the case. Id., ¶ 16.
II
¶ 14. This case presents two issues. First, we are asked to determine whether Wis. Stat. § 846.102 authorizes a circuit court to order a mortgagee to bring a property to sale. Second, we are asked whether a court can require a mortgagee to bring a property to sale at a certain point in time. Both questions require us to determine the scope of authority granted to the circuit *32 court by Wis. Stat. § 846.102. Statutory interpretation is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Bank Mut. v. S.J. Boyer Constr., Inc., 2010 WI 74, ¶ 21, 326 Wis. 2d 521, 785 N.W.2d 462.
¶ 15. Our goal in statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Interpretation of a statute begins with an examination of the statutory language. Id., ¶ 45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.
¶ 16. In seeking to give a statute its intended effect, we are cognizant that "[a] statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes — that is, from its context or the structure of the statute as a coherent whole." Id., ¶ 49. Thus, statutory language is interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." Id., ¶ 46.
¶ 17. Where the statutory language is ambiguous we turn to extrinsic sources, such as legislative history, to help us discern the meaning of a statute. Id., ¶ 51. "[A] statute is ambiguous if it is capable of being *33 understood by reasonably well-informed persons in two or more senses." Id., ¶ 47 (citations omitted).
Ill
¶ 18. We begin with the language of the statute at issue. Wisconsin Stat. § 846.102 governs actions for enforcement of mortgage liens on abandoned properties.[5] Under the statute, if the court makes an affirmative finding that a property has been abandoned, it shall enter a judgment stating that "the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered." Wis. Stat. § 846.102(1). It states:
(1) In an action for enforcement of a mortgage lien if the court makes an affirmative finding upon proper evidence being submitted that the mortgaged premises have been abandoned by the mortgagor and assigns, judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered. Notice of the time and place of sale shall be given under ss. 815.31 and 846.16 and placement of the notice may commence when judgment is entered.
Wis. Stat. § 846.102(1) (emphasis added).
¶ 19. The statute further permits entities other than the mortgagee to present evidence that a property had been abandoned and describes what type of evidence should be considered:
(2) In addition to the parties to the action to enforce a mortgage lien, a representative of the city, town, *34 village, or county where the mortgaged premises are located may provide testimony or evidence to the court under sub. (1) relating to whether the premises have been abandoned by the mortgagor. In determining whether the mortgaged premises have been abandoned, the court shall consider the totality of the circumstances, including the following:
(a) Boarded, closed, or damaged windows or doors to the premises.
(b) Missing, unhinged, or continuously unlocked doors to the premises.
(c) Terminated utility accounts for the premises.
(d) Accumulation of trash or debris on the premises.
(e) At least 2 reports to law enforcement officials of trespassing, vandalism, or other illegal acts being committed on the premises.
(f) Conditions that make the premises unsafe or unsanitary or that make the premises in imminent danger of becoming unsafe or unsanitary.
Wis. Stat. § 846.102(2).
¶ 20. The plain language of the statute grants the circuit court the authority to order a bank to sell the property. Indeed, under the statute the court's judgment must include a requirement that the property be sold. It provides that if the court makes a finding of abandonment then "judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judg *35 ment is entered."[6] Wis. Stat. § 846.102(1) (emphasis added).
¶ 21. Generally, "the word 'shall' is presumed mandatory when it appears in a statute." Karow v. Milwaukee Cnty. Civil Serv. Comm'n, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978); see also Norman J. Singer & J.D. Shambie Singer, 3 Sutherland Statutory Construction § 57:2 (7th ed. 2008) (" 'Shall' is considered presumptively mandatory unless there is something in the context or the character of the legislation which requires it to be looked at differently."). We have previously interpreted "shall" as mandatory when used in Wis. Stat. ch. 846. GMAC Mortgage Corp. v. Gisvold, 215 Wis. 2d 459, 478, 572 N.W.2d 466 (1998).
¶ 22. We acknowledge, however, that although the word "shall" suggests that a statutory provision is mandatory, the legislature's use of the word "shall" is not governed by a per se rule. See State v. R.R.E., 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991). This court has previously explained that " '[s]hall' will be construed as directory if necessary to carry out the intent of the legislature." Id.; see also State ex rel. Marberry v. Macht, 2003 WI 79, ¶ 15, 262 Wis. 2d 720, 665 N.W.2d 155 (court considers legislative intent in determining *36 whether a statutory provision is mandatory or directory); State v. Thomas, 2000 WI App 162, ¶ 9, 238 Wis. 2d 216, 617 N.W.2d 230 (noting that factors to consider in determining whether a statute is mandatory include "the statute's nature, the legislative objective for the statute, and the potential consequences to the parties, such as injuries or wrongs.").
¶ 23. The context in which "shall" is used in Wis. Stat. § 846.102(1) indicates that the legislature intended it to be mandatory. First, when the legislature uses the terms "shall" and "may" in the same statutory section, it supports a mandatory reading of the term "shall" as the legislature is presumed to be aware of the distinct meanings of the words. GMAC Mortgage Corp., 215 Wis. 2d at 478; Karow, 82 Wis. 2d at 571; Singer 7 Singer, Sutherland Statutory Construction § 57:3. In Wis. Stat. § 846.102(1) the legislature used both "shall" and "may" indicating its intent that the words have different meanings.
¶ 24. Second, a comparison with the neighboring statutes also suggests that the term "shall" in Wis. Stat. § 846.102 was intended to be mandatory. The statutes on both sides of Wis. Stat. § 846.102 address mortgage foreclosures in other circumstances. Wisconsin Stat. § 846.101 addresses foreclosures on 20-acre properties.[7] Wisconsin Stat. § 846.103 addresses fore *37 closures on commercial properties and multifamily residences.[8] Under both statutes it is up to the mortgagee to elect whether to seek a foreclosure judgment. See Wis. Stat. § 846.101 (court enters judgment if mortgagee waives judgment of deficiency and permits the mortgagor to remain in possession of the property until it is sold); Wis. Stat. § 846.103 (same). In contrast to these neighboring statutes, Wis. Stat. § 846.102 does not require action by the mortgagee after it has initiated a foreclosure proceeding. It specifically permits entities other than the mortgagee to appear and *38 submit evidence of abandonment. Wis. Stat. § 846.102(2). As the court of appeals stated, once a mortgagee has filed a foreclosure action, the focus of the proceeding is on the condition of the property, not the mortgagee's preference. Bank of New York, 352 Wis. 2d 205, ¶ 12.
¶ 25. The Bank contends that the court of appeals' interpretation of Wis. Stat. § 846.103 in Arch Bay Holdings LLC-Series 2008B v. Matson, No. 2013AP744, unpublished slip op. (Wis. Ct. App. Mar. 18, 2014), and Deutsche Bank Nat. Trust Co. v. Matson, No. 2012AP1981, unpublished slip op. (Wis. Ct. App. July 30, 2013), is dispositive on the issue of whether the court can require a mortgagee to sell an abandoned property. In Deutsche Bank, the court of appeals determined that the language in Wis. Stat. § 846.103 permitted the mortgagee to sell the property once the statutory prerequisites were met, but did not require it. No. 2012AP1981, ¶ 20. In Arch Bay, the court reached the same conclusion when interpreting a judgment containing the same language as the statute. No. 2013AP744, ¶ 17.
¶ 26. The Bank maintains that because the court of appeals determined that the language of Wis. Stat. § 846.103 was not mandatory, the same construction should be applied to Wis. Stat. § 846.102. However, as discussed above, Wis. Stat. § 846.103 and Wis. Stat. § 846.102 are significantly different statutes.[9] See supra ¶ 20. Further, Arch Bay and Deutsche Bank are unpublished and have no precedential authority. Wis. Stat. § 809.23(3)(b). Although they may be cited as *39 persuasive authority, given the above discussion, they do not persuade us that the language in Wis. Stat. § 846.102 is permissive.
¶ 27. Considering the statute's clear language and its context, the Bank's argument that it cannot be required to sell a property under Wis. Stat. § 846.102 is unpersuasive. Wisconsin Stat. § 846.102 mandates that the court order a sale of the mortgaged premises if certain conditions are met. Those conditions do not depend on action by the mortgagee alone and are not dependent on its acquiescence or consent.
IV
¶ 28. Having determined that Wis. Stat. § 846.102 authorizes a court to order a mortgagee to bring a property to sale, we turn to consider whether a court can also require a mortgagee to bring a property to sale at a certain point in time.
¶ 29. Again, we begin with the words of the statute. It provides that "the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment [of foreclosure] is entered." Wis. Stat. § 846.102(1). This language is indicative of the time frame a court must impose for the sale: "upon expiration of 5 weeks."
¶ 30. The Bank asserts that even if Wis. Stat. § 846.102 mandates that the circuit court order a sale of the property after the redemption period, it provides no time limit for the sale. Absent any specific timeline, the Bank contends that it has five years to execute its judgment under Wis. Stat. § 815.04.[10]
¶ 31. We decline to adopt the Bank's argument. We acknowledge that the word "upon" in Wis. Stat. *40 § 846.102 is ambiguous as "upon expiration of 5 weeks from the date when such judgment is entered" could be read to mean any time after the five weeks but before the five years. It could also be interpreted to mean immediately upon expiration of five weeks or something in between. In discerning the answer to our inquiry, we examine here the context of the statute, its legislative history, and the purpose of the statute.
¶ 32. When considered in light of its neighboring statutes, the context of Wis. Stat. § 846.102 suggests that the legislature intended a prompt sale. Wisconsin Stat. § 846.101, addressing 20-acre properties, provides that if the mortgagee waives judgment of deficiency and permits the mortgagor to remain in the property until it is sold, the court shall enter a judgment that the property be sold after the expiration of six months from the date of the judgment. Wisconsin Stat. § 846.103, addressing foreclosures of commercial properties and multifamily residences, provides that the mortgagee waives judgment of deficiency and permits the mortgagor to remain in the property until it is sold, the court shall enter a judgment that the property be sold after the expiration of three months from the date of the judgment. Wis. Stat. § 846.103(2).
¶ 33. The statute at issue in this case, Wis. Stat. § 846.102, prompts faster sales with fewer requirements for abandoned premises than its neighboring statutes. It provides that upon finding abandonment, *41 the court shall enter a judgment that the premises shall be sold after the expiration of five weeks. Wis. Stat. § 846.102(1). Unlike its neighboring statutes, Wis. Stat. § 846.102 does not contain the requirements that the mortgagee waive deficiency judgment and permit the mortgagor to remain on the premises in order for the court to order a sale. When viewed in light of its neighboring statutes, the loosened requirements in Wis. Stat. § 846.102 evince an intent to ensure a prompt sale of the property.
¶ 34. The contrary statutory intent asserted by the Bank is unconvincing. Referencing the redemption periods in Wis. Stat. §§ 846.101, 846.102 and 846.103, the Bank contends that the purpose behind the statute is to create delay so that defaulted borrowers will have one last chance to retain their properties. However, the Bank's assertion ignores the differences between Wis. Stat. § 846.102 and those neighboring statutes. Wisconsin Stat. § 846.102 addresses properties that have been abandoned, properties which borrowers no longer have an interest in retaining. Thus, the policy concern of creating a delay does not appear to be implicated.
¶ 35. The legislative intent for a prompt sale is also supported by the legislative history of Wis. Stat. § 846.102. In 2011, Wis. Stat. § 846.102 was amended to shorten the redemption period for abandoned properties from two months to five weeks, to add subsection (2) permitting the city, town, village, or county to provide testimony or evidence of abandonment, and to indicate what sort of evidence of abandonment a court should consider. 2011 WI Act 136, §§ lr, 2 (enacted Mar. 21, 2012). The Act was introduced as 2011 Senate Bill 307 with bipartisan support. Four individuals spoke at the public hearing on the bill: its sponsor, a representative of the City of Milwaukee, a representa *42 tive of Legal Action of Wisconsin, and a representative of the Wisconsin Bankers Association. 2011 Senate Bill 307, Hearing before the Senate Committee on Financial Institutions and Rural Issues, 2011 Regular Session, Nov. 30, 2011. Each individual referenced that the bill's intent was to help municipalities deal with abandoned properties in a timely manner.[11]
¶ 36. Two of the speakers explained that abandoned properties were a significant problem in Milwaukee. Such properties increase the crime rate and have a destabilizing impact on neighborhoods. This testimony echoes researchers' findings that home abandonment leads to blight:
Abandoned homes substantially decrease the value of neighboring properties, which in turn lowers the tax revenue cities can collect to help alleviate the blight caused by abandonment. Moreover, abandoned homes become public nuisances, such as fire hazards, that can endanger the community.
Creóla Johnson, Fight Blight: Cities Sue to Hold Lenders Responsible for the Rise in Foreclosures and Abandoned Properties, 2008 Utah L. Rev. 1169, 1171.[12]
*43 ¶ 37. Interpreting Wis. Stat. § 846.102 as permitting sale at any time within five years after judgment is entered would exacerbate the problem that the statute was meant to ameliorate. Such an interpretation would allow mortgagees to initiate foreclosures, but fail to bring the properties to sale for an extended period of time, leaving the properties in legal limbo.[13]
¶ 38. Multiple studies have remarked upon the negative impact of such a scenario. For example, a study by the Government Accountability Office determined that abandoned foreclosures create unsightly and dangerous properties that contribute to neighborhood decline. GAO, Mortgage Foreclosures: Additional Mortgage Servicer Actions Could Help Reduce the Frequency and Impact of Abandoned Foreclosures, GAO-11-93 at 29 (Nov. 2010). "[A]s a result of vandalism, exposure, and neglect, vacant properties can become worthless. . . . abandoned foreclosures that remain vacant for extended periods pose significant health, safety, and welfare issues at the local level." Id. at 31.
¶ 39. Another study has observed that "[t]he result of these abandoned foreclosures has been devastating to cities and consumers throughout the country." Judith Fox, The Foreclosure Echo: How Abandoned Foreclosures are Reentering the Market *44 through Debt Buyers, 26 Loy. Consumer L. Rev. 25, 29-30 (2013). "With no threat of citation for nuisance violations, and thus little incentive to maintain the premises, many lenders very well may allow the properties they control to deteriorate." Kristin M. Pinkston, In the Weeds: Homeowners Falling Behind on their Mortgages, Lenders Playing the Foreclosure Game, and Cities Left Paying the Price, 34 S. 111. U.L.J. 621, 633 (2009). Failing to interpret Wis. Stat. § 846.102 as enabling a court to require a prompt sale would inhibit its use as a tool to address abandoned properties.
¶ 40. Because its context and the legislative history of Wis. Stat. § 846.102 clearly indicate that the statute was intended to help municipalities deal with abandoned properties in a timely manner, we decline to interpret it so as to permit properties to languish abandoned for five years. Cf Waller v. Am. Transmission Co., 2013 WI 77, ¶ 108, 350 Wis. 2d 242, 833 N.W.2d 764 (construing statute in a manner to further the statutory purpose); Bank Mut., 326 Wis. 2d 521, ¶¶ 71-76 (interpreting Wis. Stat. § 846.103 in a manner consistent with the statute's goals).
¶ 41. In order to give effect to the statute's purpose, we interpret the requirement in Wis. Stat. § 846.102 that a court order an abandoned property to be brought to sale after the five week redemption period as a requirement that the court order the property to be brought to sale within a reasonable time after the redemption period. Admittedly, what is considered a reasonable time will vary with the circumstances of each case. The circuit court is in the best position to consider arguments and evidence on this issue. Thus, we leave it to the circuit court's discretion *45 to determine, after considering the totality of the circumstances, what a reasonable period of time may be for each case, in light of the statute's purpose.
V
¶ 42. In this case, the circuit court did not determine whether the property on Concordia Avenue was abandoned. Rather, it denied Carson's motion after concluding that it did not have the authority to order the mortgagee to bring the property to sale as requested by Carson. Given that we have concluded that the circuit court does have such authority, a finding as to whether the property has been abandoned is needed here. Absent a finding of abandonment, sale of the property cannot be ordered under Wis. Stat. § 846.102.
¶ 43. Accordingly, we remand the case to the circuit court to determine whether the Concordia property has been abandoned. If the court finds that the property has been abandoned, it shall consider the totality of the circumstances and, consistent with the statutory purpose, enter an order stating the reasonable time after the redemption period in which the mortgagee must bring the property to sale.
VI
¶ 44. In sum, based on the statute's plain language and context we conclude that when the court determines that the property is abandoned, Wis. Stat. § 846.102 authorizes the circuit court to order a mortgagee to bring a mortgaged property to sale after the redemption period.
| 45. We further conclude, consistent with the purpose of the statute, that the circuit court shall order the property to be brought to sale within a reasonable *46 time after the redemption period. The circuit court's determination of what constitutes a reasonable time should be based on the totality of the circumstances in each case.
¶ 46. In this case, the circuit court did not reach the issue of whether the property had been abandoned. Accordingly, we affirm the court of appeals and remand the case to the circuit court for such a determination and further proceedings.
By the Court. — The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

 Bank of New York v. Carson, 2013 WI App 153, 352 Wis. 2d 205, 841 N.W.2d 573 (reversing judgment of the circuit court for Milwaukee County, Jane V. Carroll, judge).

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 "Loan servicers are the entities that collect payments for mortgages, provide billing and tax payments to the homeowners, and have sole control over the modification of a loan." Andrew Peace, Coming Up for Air: The Constitutionality of Using Eminent Domain to Condemn Underwater Mortgages, 54 B.C. L. Rev. 2167, 2178 n.82 (2013).

 Wisconsin Stat. § 846.102(1) states:
In an action for enforcement of a mortgage lien if the court makes an affirmative finding upon proper evidence being submitted that the mortgaged premises have been abandoned by the mortgagor and assigns, judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered.

 The language of the statute and its placement within chapter 846 indicate that it governs only foreclosure actions initiated by mortgagees.

 Wisconsin Stat. § 846.10 states, in relevant part:
(1) If the plaintiff recovers the judgment shall describe the mortgaged premises and fix the amount of the mortgage debt then due and also the amount of each installment thereafter to become due, and the time when it will become due,.. . and shall adjudge that the mortgaged premises be sold for the payment of the amount then due .. . and when demanded in the complaint, direct that judgment shall be rendered for any deficiency against the parties personally liable ....

 Wisconsin Stat. § 846.101 states:
(1) If the mortgagor has agreed ... to the provisions of this section, and the foreclosure action involves a one- to 4-family residence that is owner-occupied at the commencement of the action . . . the plaintiff in a foreclosure action of a mortgage on real estate of 20 acres or less . . . may elect... to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises . . . and to consent that the mortgagor, unless he or she abandons the property, may remain in possession *37 of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court.
(2) When plaintiff so elects, judgment shall be entered as provided in this chapter, except that. .. the sale of such mortgaged premises shall be made upon the expiration of 6 months from the date when such judgment is entered.

 Wisconsin Stat. § 846.103 provides:
(1) No foreclosure sale involving real property other than a one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action. . . may be held until the expiration of 6 months from the date when judgment is entered except a sale under sub. (2). . . .
(2) If the mortgagor of real property other than a one- to 4r-family residence that is owner-occupied at the commencement of the foreclosure action . . . has agreed ... to the provisions of this section, the plaintiff in a foreclosure action of a mortgage .. . may elect by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises . . . and to consent that the mortgagor, unless he or she abandons the property, may remain in possession of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court. WThen the plaintiff so elects, judgment shall be entered as provided in this chapter, except that. . . the sale of the mortgaged premises shall be made upon the expiration of 3 months from the date when such judgment is entered.

 We decline to interpret the similar sale language in Wis. Stat. §§ 846.101 and 846.103 as it is not at issue in this case.

 Wisconsin Stat. § 815.04(l)(a) provides:
*40 Upon any judgment of a court of record perfected as specified in s. 806.06 or any judgment of any other court entered in the judgment and lien docket of a court of record, execution may issue at any time within 5 years after the rendition of the judgment. When an execution has been issued and returned unsatisfied in whole or in part other executions may issue at any time upon application of the judgment creditor.

 The hearing can be viewed online at: http .7/ www.wiseye.org/ProgrammingATdeoArchive/ArchiveList.aspx? cm=152.

 The City of Milwaukee submitted an amicus brief detailing the scope of the City's abandoned property problem. It noted that there are currently 4,900 vacant buildings in the City. According to the City's records, approximately 400 of those 4,900 properties are currently in some stage of mortgage foreclosure.
Abandoned properties in Milwaukee are a magnet for crime and create unsafe conditions. The City explained that since 2011, its police department has responded to at least 2,025 burglaries, 93 aggravated assaults, 84 robberies, 44 *43 sexual assaults, 36 sudden deaths, and 7 homicides at vacant buildings. Further, the City's fire department reported a 163% increase in the number of fires occurring in vacant residential buildings between 2005 and 2012.

 Various terms are used to describe this situation, including: "abandoned foreclosure," "bank walkaway," "zombie title/property," and "limbo loan." See Judith Fox, The Foreclosure Echo: How Abandoned Foreclosures are Reentering the Market Through Debt Buyers, 26 Loy. Consumer L. Rev. 25, 31 (2013).