Broadfoot, J.
 

 Orders or determinations of the Public Service Commission are reviewable in the manner provided
 
 *115
 
 in ch. 227, Stats. All references herein to statutes are to the 1957 statutes. Sec. 227.15, Stats., provides:
 

 “Administrative decisions, which directly affect the legal rights, duties, or privileges of any person, . . . shall be subject to judicial review as provided in this chapter; . . .”
 

 Sec. 227.16, Stats., provides in part:
 

 “(1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in sec. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter.”
 

 In
 
 Greenfield v. Joint County School Comm.
 
 271 Wis. 442, 447, 73 N. W. (2d) 580, we held:
 

 “The right of appeal is statutory and does not exist except where expressly given, and cannot be extended to cases not within the statute. A person is aggrieved by a judgment whenever it operates on his rights of property or bears directly on his interest. An ‘aggrieved party’ within the meaning of a statute governing appeals is one having an interest recognized by law in the subject matter which is injuriously affected by the judgment.
 
 In re Fidelity Assur. Asso.
 
 (1945), 247 Wis. 619, 20 N. W. (2d) 638. The word ‘aggrieved’ refers to a substantial grievance, a denial of some personal or property right or the imposition of a burden or obligation.
 
 Bowles v. Dannin
 
 (1938), 62 R. I. 36, 2 Atl. (2d) 892.”
 

 The above quotation was cited with approval in
 
 Milwaukee v. Milwaukee County School Comm.
 
 8 Wis. (2d) 226, 229, 99 N. W. (2d) 186. Milwaukee contends that the court was there dealing with the school laws and those decisions are not applicable to petitions for review under ch. 227, Stats. However, the expression “aggrieved party” or a statement of when a person is aggrieved by a judgment or order has the same meaning under any section of our
 
 *116
 
 statutes unless specifically limited or expanded by the words of the particular statute. Sec. 227.01 (2), Stats., reads as follows:
 

 “ ‘Contested case’ means a proceeding before an agency in which, after hearing required by law, the legal rights, duties, or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty, or privilege is denied or controverted by another party .to such proceeding.”
 

 In
 
 Park Bldg. Corp. v. Industrial Comm. 9
 
 Wis. (2d) 78, 92, 100 N. W. (2d) 571, we cited the above subsection and quoted with approval from an article on the Wisconsin Administrative Procedure Act by Ralph M. Hoyt which appeared in 1944 Wisconsin Law Review, 214, 220, as follows :
 

 “It should be noted that these rules are made applicable only to ‘contested cases,’ which are defined in the opening section of the act as proceedings in which ‘the legal rights, duties, or privileges of specific parties are required by law to be determined by decisions or orders addressed to them or disposing of their interests after opportunity for hearing.’ Thus the rules apply only to those situations in which the law already requires an opportunity for hearing to be offered. The procedure act does not itself specify or determine what types of cases require a hearing; that is a matter which is left for specification in the particular regulatory act which the agency administers.”
 

 We thereby adopted that language and that interpretation of the scope of ch. 227, Stats., as our own.
 

 The issue in these cases ■ is whether or not the city of Milwaukee is an aggrieved party in contested cases so that it is entitled to a judicial review of the determinations and orders of the Public Service Commission.
 

 Milwaukee contends that it is an aggrieved party in contested cases under the provisions of ch. 227, Stats., because
 
 *117
 
 it has an indeterminate permit as a water public utility in each of the two villages and in the city of Glendale. Its argument is based on the fact that it operates a municipal water-utility system within Milwaukee county and that its operations are governed by applicable provisions of the Wisconsin statutes and that it is subject to regulation by the commission.
 

 It is established that Milwaukee as a utility has for many years sold water to the villages of Whitefish Bay and Fox Point at wholesale, in compliance with the rules and regulations, service standards, and rates prescribed by the commission. Fox Point and Whitefish Bay have their own distribution systems and they distribute the water so purchased at wholesale to the inhabitants of their respective villages by means thereof. Milwaukee contends that under sec. 66.069 (2) (a), Stats., a city owning a water plant may serve persons or places outside of its corporate limits, including municipalities, and may interconnect with another municipality, whether contiguous or not. It is argued that since Milwaukee performs public-utility functions by supplying water, it follows that Milwaukee must be deemed to have a franchise to furnish said water to the other municipalities.
 

 The commission determined throughout that Milwaukee had no grant, franchise, or indeterminate permit to operate as a public utility in Whitefish Bay, Fox Point, or Glendale. Milwaukee cites as authority for its position the determination of the commission in City of Wauwatosa as a Water Public Utility v. City of Milwaukee as a Water Public Utility, 43 P. S. C. Rep. 124. In that case the city of Wauwatosa, as the petitioner, alleged that the city of Milwaukee was operating under an indeterminate permit granted by the state of Wisconsin. The .commission made no such finding .in that case, but held that Milwaukee had furnished water to other adjacent municipal water public utilities for resale and its actions constituted a voluntary
 
 *118
 
 holding out by it to furnish water for resale to other water public utilities operated by municipalities in Milwaukee county contiguous to it, and thereby assumed an obligation as a water public utility to provide such a service to any municipal water utility so located. That is far from saying that Milwaukee had an indeterminate permit in the other municipalities to which it furnished water for resale.
 

 Milwaukee calls attention to the fact that the commission permits it to make a demand charge for fire protection to the villages and therefore it has a franchise with respect to this type of service as well as with reference to its wholesale service. In support thereof it cites
 
 Wisconsin Power & Light Co. v. Beloit,
 
 215 Wis. 439, 254 N. W. 119, and
 
 Calumet Service Co. v. Chilton,
 
 148 Wis. 334, 135 N. W. 131. The cases are readily distinguishable and do not control or apply to the cases before us. The fact that Milwaukee is permitted to charge a rate because of a possible demand for water for fire protection cannot result in an indeterminate permit for that limited service.
 

 Existence as a public utility does not result in the grant of an indeterminate permit.
 
 Muscoda Bridge Co. v. Muscoda,
 
 193 Wis. 457, 459, 214 N. W. 435;
 
 South Shore Utility Co. v. Railroad Comm.
 
 207 Wis. 95, 106, 240 N. W. 784.
 

 Sec. 196.01 (5), Stats., provides that an indeterminate permit is based on a grant by the state, directly or indirectly. An indirect grant must of necessity be a grant or franchise by a municipality. Milwaukee can show no such grant.
 

 An area of Glendale east of North Port Washington road and south of the Milwaukee river has been served with water for some time by Milwaukee. The application of the city of Glendale for authority to transact business as a water public utility and to construct facilities did not include that area of the city. Milwaukee makes a claim to having an indeter
 
 *119
 
 mínate permit in the city of Glendale because of the provision of sec. 66.061 (1) (d), Stats., which reads as follows:
 

 “Whenever any city or village at the time of its incorporation included within its corporate limits territory in which a public utility, prior to such incorporation, had been lawfully engaged in rendering public-utility service, such public utility shall be deemed to possess a franchise to operate in such city or village to the same extent as though such franchise had been formally granted by ordinance duly adopted by the governing body of such city or village. This paragraph shall not apply to any public utility organized under any provisions of ch. 66.”
 

 That subsection was added to the statutes by ch. 374, Laws of 1953. The file in the office of the legislative reference library indicates that all but the last sentence of said subsection was drafted pursuant to instructions by the legislative counsel of a large public utility engaged in the sale of electric energy. The last sentence thereof was offered as an amendment by the senate committee on state and local government but drafted by instructions of the same legislative counsel.
 

 Milwaukee contends that since it was serving as a water public utility in a portion of the town prior to its incorporation as a city, it now has an indeterminate permit to operate as such anywhere within the said city. Milwaukee contends that it does not come under the last sentence of said subsection because it was organized under the provisions of ch. 475, Laws of 1871. Milwaukee is attempting to give the word “organized” its restricted meaning of “incorporating” or “first organization.” It was clearly the intention of the legislature to exempt municipal utilities from the operation of the subsection. To give it that effect a broad meaning must be given to the word “organized.” The Milwaukee water utility is expressly subject to some provisions of ch. 66, Stats., as, for example, secs. 66.06 and 66.071, Stats.
 
 *120
 
 Milwaukee itself has referred to sec. 66.069 (2) (a) as being applicable and, although the original water system may have been constructed pursuant to the 1871 act, by later enactments it has become subject to the provisions of ch. 66, Stats., relating to water public utilities. Therefore it can claim nothing by virtue of the quoted subsection, as it is subject to provisions of ch. 66, Stats.
 

 In Milwaukee’s application for authority to extend its water service in the city of Glendale under certain terms and conditions, the terms and conditions outlined, among others, were that Glendale should finance and provide a water-distribution system within its incorporated limits, complete with hydrants and other accessories, all acceptable to and without cost to the Milwaukee waterworks; that the city of Glendale should pay to the Milwaukee waterworks the lump sum of delinquent water and meter-repair bills of customers of the city; and there were other burdensome conditions without any revenue being available to Glendale from the operation of the water utility for the payment of the cost thereof. The entire cost would have to be paid for by direct tax upon the property of the city and would have to be financed by general obligation bonds as there would be no revenues from which to service revenue bonds.
 

 The conditions were entirely unacceptable to Glendale and were promptly rejected by the city council thereof. A permit based upon said application without the consent and co-operation of Glendale would be meaningless and unenforceable. The commission properly determined that the city of Glendale had the right to make the initial determination subject to any needed commission approvals or requirements so as to obtain water-utility service for its inhabitants in the manner which it deemed best, and cited
 
 Wisconsin Hydro Electric Co. v. Public Service Comm.
 
 234 Wis. 627, 635, 291 N. W. 784.
 

 
 *121
 
 Milwaukee further contends that it is an aggrieved party because of the financial effect the orders and determinations will have upon it. It points to a program of expansion of the facilities of its water department, some of which it claims was carried out at the direction of the commission and that it has plans for future expansion, all with a view to caring for the needs of the adjoining suburbs; that it has sold mortgage-revenue bonds in the sum of $20,000,000 and anticipates that it will borrow an additional $19,000,000 by the same means in the near future; that the loss of revenue from the sale of water to Fox Point and Whitefish Bay will reduce its revenue and make a portion of its plant and distribution system functionless.
 

 The same argument was made in the
 
 Wisconsin Hydro Electric Co. Case, supra.
 
 In that case this court stated that the electric company no doubt had a remote financial stake in the controversy but that did not make it an aggrieved party in that proceeding.
 

 The commission determined that the water used by Fox Point and Whitefish Bay is such a small percentage of the total water supplied by Milwaukee that the normal increase in consumption of water within the area would soon require the water now supplied to those villages. In addition, the commission held that in planning its expansion program the engineers were informed by the city of Milwaukee that Fox Point and Whitefish Bay could cease to purchase water, and that was considered in drafting the plans for expansion. Thus, any effect upon Milwaukee’s finances and its plans for expansion of its water facilities will be temporary.
 

 In the
 
 Wisconsin Hydro Electric Co. Case, supra,
 
 plaintiff, a public utility, had sold electric energy at wholesale to the city of Cumberland for resale by means of the city’s distribution system, also a public utility. To provide the energy the plaintiff invested large sums of money in equip
 
 *122
 
 ment. Upon expiration of the contract plaintiff and the city could not agree upon a new contract and the city made application to the commission for authority to install its own generating plant, which was granted. In an action brought to review the commission order this court spoke with reference to the status of Wisconsin Hydro Electric to maintain the action as follows (p. 634) :
 

 “It is considered that the trial court correctly held that the Wisconsin Plydro Electric Company had no interest which entitled it to maintain this action. While the statute provides that any public utility may bring an action, that must be understood to mean a public utility with an interest in the controversy. The Electric Company has no such interest. No doubt it has a remote financial stake in the controversy. If the city of Cumberland can be prevented from generating its own electrical energy it will be obliged to make a contract with the Electric Company, but the possibility or even the probability that the Electric Company would procure such a contract does not give it a legal interest in this controversy.”
 

 A somewhat-similar situation was presented in the case of
 
 Central Wisconsin Power Co. v. Wisconsin T., L., H. & P. Co.
 
 190 Wis. 557, 209 N. W. 755. There the city of Clintonville operated a municipal public electric utility. Plaintiff sold electric energy to the city for resale under a contract. In that case the city was permitted to cease purchasing its electric energy from the plaintiff and to purchase it from the defendant, another public utility. It was held that plaintiff had no indeterminate permit to serve Clinton-ville or in Clintonville.
 

 Milwaukee also contends that, by granting authority to the two villages and Glendale to construct a supply facility, the commission is authorizing the formation of a competing public utility. The contract between the participating municipalities shows that no separate entity is created, but the three
 
 *123
 
 communities will own the water-supply facilities in common. There is nothing in the commission orders, findings, or determinations that permits competition with the Milwaukee utility.
 

 Milwaukee argues that each of the applications resulted in a contested case before the commission. It received a notice in each, appeared in each, and introduced evidence and examined witnesses in each. The statutory definition of “contested case” is quoted above. Our attention has not been called to any provision of the statutes or rules of the commission that required a hearing on any of the applications. In connection with its argument that a competing utility is being created, Milwaukee cites sec. 196.50, Stats., dealing with competing utilities wherein a hearing is required. If Milwaukee had indeterminate permits in the three municipalities and if the orders before us permitted competition, a hearing would be required.
 

 The right of review is entirely statutory and orders of administrative agencies are not reviewable unless made so by statute. Milwaukee has not established that it is a person aggrieved nor that the determinations of the commission it seeks to review directly affect its legal rights, duties, or privileges. Since Milwaukee is not a person aggrieved in a contested case, the trial court was correct in dismissing its petitions for review, and each of them.
 

 By the Court.
 
 — In Case No. 24 the order and judgment are affirmed; in Case No. 25 the order and judgment are affirmed; in Case No. 26 the order and judgment are affirmed; in Case No.
 
 27
 
 the order and judgment are affirmed.
 

 Hallows, J., took no part.