**2025 WI 5**

# Supreme Court of Wisconsin



KENNETH BROWN,

*Plaintiff, Respondent, Cross-Appellant,*

*v.*

WISCONSIN ELECTIONS COMMISSION, et al.,
*Defendant, Co-Appellant, Cross-Respondent.*

No. 2024AP232
Decided February 18, 2025

APPEAL from a judgment and order of the Racine County Circuit
Court (Eugene A. Gasiorkiewicz, J.) No. 2022CV1324

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN
WALSH BRADLEY, DALLET, and PROTASIEWICZ, JJ., joined. ZIEGLER, C.J., filed
a dissenting opinion. REBECCA GRASSL BRADLEY, J., filed a dissenting
opinion in which ZIEGLER, C.J., joined with respect to ¶¶43-44, and in
which HAGEDORN, J., joined with respect to ¶¶28-43.

¶1    JILL J. KAROFSKY, J.   In this case we are tasked with deciding
whether Kenneth Brown has standing to seek judicial review of a
Wisconsin Elections Commission (WEC) decision regarding the in-person
absentee voting procedures[1] implemented by the Racine City Clerk during
the August 2022 primary election. We determine he does not.

---

[1] An elector may vote at her or his polling place on Election Day, or may
vote by absentee ballot. *See* WIS. STAT. §§ 6.77(1), 6.85. In-person absentee voting
is one method by which an elector may vote absentee. For example, the elector

¶2      This case stems from a complaint Brown filed with WEC under WIS. STAT. § 5.06(1) (2021-22).[2] This subsection allows "any elector" served by a local election official to bring a complaint to WEC about the election official's conduct if the elector believes the conduct violates the law. Brown contended that the in-person absentee voting he observed in Racine violated the law. WEC found that Brown failed to establish probable cause of a violation, and Brown appealed WEC's decision to the circuit court. The circuit court determined that Brown had standing and partially ruled in Brown's favor. In this action, which came to us via a bypass petition, WEC asserts Brown does not have standing to seek judicial review.

¶3      To answer the question of whether Brown has standing, we look to WIS. STAT. § 5.06(8), as it sets forth which § 5.06 complainants may seek judicial review of WEC's decisions. Section 5.06(8) reads in pertinent part: "Any election official or complainant who is aggrieved by an order issued under [§ 5.06(6)] may appeal the decision of the commission to circuit court . . . ." Therefore, in order to have standing Brown must have been "aggrieved by an order" issued under § 5.06(6).

¶4      We hold that Brown was not "aggrieved by an order" issued under § 5.06(6). We have consistently held that to be "aggrieved" by a decision in the context of a statute governing appeals, an individual must suffer an injury to a legally recognized interest as a result of the decision. Brown has failed to demonstrate that WEC's decision caused him any such injury. As a result, Brown does not have standing, and his complaint must be dismissed.

## I. BACKGROUND

¶5      Only a brief overview is necessary to provide adequate context for the standing analysis. Wisconsin municipalities may designate alternate absentee voting sites where voters may request, vote, and return their absentee ballots prior to Election Day. WIS. STAT. § 6.855. In the 2022

---

may request, vote, and return her or his absentee ballot in person at the municipal clerk's office, or at an alternate site designated under § 6.855.

[2] All references to the Wisconsin Statutes are to the 2021–22 version.

election year the City of Racine designated multiple alternate sites as eligible for absentee voting. The Racine City Clerk then selected 22 of the approved sites for the August 2022 primary. The clerk posted a notice for the sites as required by § 6.855(2). One site was located in City Hall and was open during regular business hours and some Saturdays. The other 21 sites were located throughout the city. Absentee voting occurred at those 21 sites using Racine's mobile election unit, a large vehicle containing election equipment. On each day of the absentee voting period, two of these 21 sites were open, each for a three-hour block of time. During the three hours in which one of those 21 sites was open, the mobile election unit was parked at the previously noticed site. Voters could request, vote, and return absentee ballots inside the vehicle.

¶6      On August 3, 2022, Brown observed in-person absentee voting occur at City Hall and outside a local mall where the mobile election unit was parked. Brown believed the absentee voting procedures at these two locations violated the law, so he filed a complaint with WEC under WIS. STAT. § 5.06.

¶7      Section 5.06(1) provides a means by which individuals like Brown may challenge the decisions of local election officials. Any elector may file a complaint with WEC if she or he believes that a local election official's decision-making violates the law. § 5.06(1). Upon receiving a complaint, WEC may conduct an investigation and hold a hearing if appropriate. § 5.06(1), (4), (5). WEC may then "summarily decide the matter before it and, by order, require any election official to conform his or her conduct to the law . . . ." § 5.06(6). Any election official or complainant who is "aggrieved by an order" issued under § 5.06(6) may appeal WEC's decision to the circuit court. § 5.06(8).

¶8      In his complaint to WEC, Brown contended that the Racine City Clerk's administration of Racine's alternate sites violated a number of statutory requirements set out in § 6.855. Brown maintained that: (1) the alternate sites were not "as near as practicable" to the clerk's office; (2) the alternate sites "afford[ed] an advantage" to a political party; (3) "function[s] related to voting and return of absentee ballots" were impermissibly conducted in the same building as the clerk's office; (4) the alternate sites were not designated for the appropriate time period; and (5) Racine's use of the mobile election unit violated § 6.855. WEC thereafter

issued a decision finding no probable cause that the Racine City Clerk violated any statute and declined to take additional action.[3]

¶9    Brown appealed to the circuit court, which determined that Brown had standing to bring the action because the Racine City Clerk's use of invalid voting procedures impacted his right to vote. The court then reversed WEC's decision on two grounds. First, the court concluded that the clerk's choice of alternate sites violated § 6.855's requirement that alternate sites not "afford an advantage to any political party." Second, the court determined that the clerk's use of the mobile election unit violated § 6.855.[4] WEC sought to appeal the circuit court's decision and petitioned this court for bypass of the court of appeals, which we granted.

## II. ANALYSIS

¶10    The threshold issue before us is whether Brown has standing to seek judicial review of WEC's decision under WIS. STAT. § 5.06. Whether a party has standing is a question of law that this court reviews independently. *Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342. Embedded within the question of standing here is the proper interpretation of WIS. STAT. § 5.06(8), which we also review independently. *Priorities USA v. WEC*, 2024 WI 32, ¶12, 412 Wis. 2d 594, 8 N.W.3d 429.

¶11    We begin this analysis by interpreting WIS. STAT. § 5.06(8), which allows for appeals from WEC's decisions on § 5.06 complaints. Then we explain why we reject Brown's contention that a complainant is *always* aggrieved under § 5.06(8) when she or he believes that a local election official engaged in unlawful activity, and WEC issues a decision declining to take corrective action.

---

[3] Under § 5.06(6), WEC may, "by order, require any election official to conform his or her conduct to the law, restrain an official from taking any action inconsistent with the law or require an official to correct any action or decision inconsistent with the law." Because WEC found no probable cause that a violation occurred, it declined to issue such an order here.

[4] The circuit court agreed with WEC as to the other three issues raised in Brown's complaint. All five issues raised in the complaint are before this court on bypass.

4

¶12    Standing in this case is governed by WIS. STAT. § 5.06(8), which provides the means for complainants and election officials to appeal WEC decisions resulting from § 5.06 complaints. *See Knight v. Milwaukee Cnty.*, 2002 WI 27, ¶14, 251 Wis. 2d 10, 640 N.W.2d 773 (interpreting a statute granting the right to appeal to determine whether a plaintiff had standing to appeal); *Friends of Black River Forest*, 402 Wis. 2d 587, ¶20 (doing the same). Section 5.06(8) reads:

> Any election official or complainant who is aggrieved by an order issued under sub. (6) may appeal the decision of the commission to circuit court for the county where the official conducts business or the complainant resides no later than 30 days after issuance of the order. Pendency of an appeal does not stay the effect of an order unless the court so orders.

Here we must determine whether Brown was "aggrieved" by WEC's decision such that he has standing to appeal the decision to circuit court.

¶13    "Aggrieved" is a term of art often used in Wisconsin statutes granting parties the right to appeal certain decisions. *See, e.g.,* WIS. STAT. § 227.53 (administrative agency decisions under § 227.52); § 879.27 (probate proceedings); § 60.03(6) (town divisions or dissolutions). As we explained in *City of Milwaukee v. Public Service Commission*, 11 Wis. 2d 111, 115–16, 104 N.W.2d 167 (1960), such language is to be interpreted consistently across statutes: "[T]he expression 'aggrieved party' or a statement of when a person is aggrieved by a judgment or order has the same meaning under any section of our statutes unless specifically limited or expanded by the words of the particular statute." *See also Estate of Matteson v. Matteson*, 2008 WI 48, ¶22, 309 Wis. 2d 311, 749 N.W.2d 557 (explaining that when this court interprets statutes, "we give legal terms of art their accepted legal meaning").

¶14    A person is aggrieved by a decision when she or he has "an interest recognized by law in the subject matter which is injuriously affected by the judgment." *Town of Greenfield v. Joint Cnty. Sch. Comm.*, 271 Wis. 442, 447, 73 N.W.2d 580 (1955); *Knight*, 251 Wis. 2d 10, ¶16 (quoting *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 611, 511 N.W.2d 855 (1994)). Put differently, to be aggrieved by a decision, one must have suffered an injury to a legally recognized interest as a result of the decision. This inquiry is often broken down into two questions: (1) Did the party suffer a

threatened or actual injury as a result of the decision? And (2) is that injury recognized by law? *See Fox v. DHSS*, 112 Wis. 2d 514, 524–25, 334 N.W.2d 532 (1983).

¶15 Applying these principles, § 5.06 does not define the word "aggrieved" or the phrase "election official or complainant who is aggrieved by an order." Furthermore, § 5.06 does not include any other language that references the word "aggrieved," or language that specifically limits or expands its meaning. Consequently, we interpret aggrieved to mean the same as what it means in other statutes and hold that a complainant is "aggrieved" by WEC's decision when she or he has suffered an injury to a legally recognized interest as a result of WEC's decision. *See City of Milwaukee*, 11 Wis. 2d at 115–16.

¶16 Here we determine that Brown did not suffer an injury to a legally recognized interest as a result of WEC's decision. Brown contends he was injured by WEC's decision because WEC found no probable cause that the Racine City Clerk violated the law and therefore declined to take corrective action. But Brown does not allege that WEC's decision personally affected him. For instance, he does not allege that the challenged election activity (and, consequently, WEC's decision declining to take action to stop the activity) made it more difficult for him to vote or affected him personally in any manner. As a result, Brown fails at the first step of the standing inquiry—he does not show that he has personally suffered (or will suffer) an injury as a result of WEC's decision.[5] Because Brown was not injured by WEC's decision, he was not aggrieved within the meaning of § 5.06(8) and does not have standing to seek judicial review. *See Fox*, 112 Wis. 2d at 524–25 ("To have standing, the petitioner must have 'suffered some threatened or actual injury resulting from the putatively illegal action.'" (quoting *State ex rel. First Nat'l. Bank of Wis. Rapids v. M & I Peoples Bank of Coloma*, 95 Wis. 2d 303, 308, 290 N.W.2d 321 (1980))).

---

[5] Nor does Brown submit a "vote pollution" or "vote dilution" theory—in other words, he does not allege an injury to his right to vote on the ground that his vote will be diluted by unlawful voting. Accordingly, the court declines to express an opinion about whether such claims would be sufficient to confer standing.

¶17 To be sure, "[i]t is not the magnitude of the injury that confers standing, but rather the fact that an injury has occurred." *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 69, 387 N.W.2d 245 (1986). In other words, the bar is low—even an injury to a "trifling interest" may be sufficient to confer standing. *Id.* at 65 (quoting *Fox*, 112 Wis. 2d at 524). But because Brown did not allege that WEC's decision injured him personally in any way, he does not cross that low threshold.

¶18 Instead of attempting to demonstrate injury under this well-established rubric, Brown advances the proposition that a complainant is *always* aggrieved under § 5.06(8) when she or he believes that a local election official engaged in unlawful activity, and WEC issues a decision declining to take corrective action. This proposition relies on two related but distinct arguments, both of which we reject.

¶19 To begin, Brown contends that he is aggrieved by WEC's decision because he suffered injury to a statutory right created by § 5.06. Specifically, Brown claims that § 5.06(1) establishes a general statutory right for an elector to compel her or his local election officials to comply with the law. We reject Brown's assertion because § 5.06(1) creates no such right. Instead the statute provides a means for an individual elector to file a complaint with WEC when she or he believes that a local election official's decision is "contrary to law" or that the official has "abused the[ir] discretion." § 5.06(1). The statute *separately* provides a means for an elector aggrieved by a WEC decision to appeal the decision to circuit court. § 5.06(8). In other words, the legislature distinguished between an individual who may file a complaint with WEC ("any elector"), and an individual who may seek judicial review of WEC's handling of a complaint (complainant "aggrieved by an order"). Section 5.06 does not expressly grant an elector a freestanding right to compel local election officials to comply with the law. Nor does § 5.06 imply such a right—as we have said before, the right to complain to an administrative agency about a potential statutory violation does not automatically entail the right to bring an action based on that alleged violation in court. *See Fox*, 112 Wis. 2d at 526 ("Standing to challenge [an] administrative decision is not conferred upon a petitioner merely because that person requested and was granted an administrative hearing.").

¶20 In addition, Brown maintains that an elector always suffers an injury when WEC rules against the elector. Brown interprets

"complainant who is aggrieved by an order" to mean "complainant who received an unfavorable result from WEC."[6] Specifically, he maintains that an elector who files a complaint under § 5.06(1) is necessarily aggrieved under § 5.06(8) when WEC declines to take action on that elector's complaint, regardless of whether the elector has demonstrated any direct injury as a result of WEC's decision. We reject this interpretation of § 5.06(8) for three reasons.

¶21     First, Brown offers little reason for us to interpret the word aggrieved differently than we have in prior cases. In prior cases, we have interpreted "statement[s] of when a person is aggrieved by a judgment or order" consistently across appeals statutes. *See City of Milwaukee*, 11 Wis. 2d at 115–16. Here, we interpret the phrase "complainant who is aggrieved by an order" by relying upon that jurisprudence. This court has consistently interpreted "aggrieved" to require that the decision cause an injury to a legally recognized interest—not just that the complainant be the losing party. *See id.* at 115; *Greenfield*, 271 Wis. at 447; *Knight*, 251 Wis. 2d 10, ¶16; *see also Friends of Black River Forest*, 402 Wis. 2d 587, ¶26 (explaining that when "person aggrieved" lacked a statutory definition in ch. 227, the court had required an injury to a legally recognized interest).[7]

¶22     Second, even if we were to set aside our prior case law and interpret aggrieved without reference to other statutes, there is little

_____

[6] Brown claims § 5.06(2) supports his contention that an elector is automatically aggrieved when WEC dismisses her or his complaint. We disagree. Section 5.06(2) reads in pertinent part: "No person who is authorized to file a complaint under sub (1) . . . may commence an action or proceeding to test the validity of any decision . . . on the part of any election official . . . without first filing a complaint under sub. (1)." This section simply establishes an administrative exhaustion requirement; it bears no textual or conceptual connection to whether an individual is aggrieved such that she or he has standing to appeal.

[7] Brown points to a court of appeals case for the proposition that the aggrieved requirement simply ensures that someone receiving a favorable decision from WEC cannot file an appeal. *Roth v. La Farge Sch. Dist. Bd. of Canvassers*, 2001 WI App 221, ¶14, 247 Wis. 2d 708, 634 N.W.2d 882. Yet that case also recognized that to be "aggrieved," a party must be "directly injured." *See id.*, ¶13.

reason to accept that a "complainant who is aggrieved by an order" simply means a "losing party." The ordinary meaning of the word "aggrieved" is, in fact, "injured." *Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶¶36–37, 310 Wis. 2d 751, 751 N.W.2d 764 (reviewing dictionary definitions and explaining that the words injured and aggrieved are "interchangeable"). Brown's interpretation not only fails to give that effect to the meaning of the word aggrieved, it essentially reads the words "aggrieved by an order" out of the statute.[8] Under Brown's reading, *any* time WEC decides a case against a complainant, that complainant is entitled to judicial review. But *only* those complainants who lose before WEC would have reason to appeal. As such, this interpretation fails to ascribe meaning to every word in the statute, a result we avoid here. *See Landis v. Physicians Ins. Co. of Wis.*, 2001 WI 86, ¶16, 245 Wis. 2d 1, 628 N.W.2d 893 (explaining that "courts must attempt to give effect to every word of a statute").

¶23 Third, we have explicitly said that receiving an adverse administrative decision does not, by itself, make a complainant aggrieved or entitled to judicial review. *See Fox*, 112 Wis. 2d at 526; *Waste Mgmt. of Wis., Inc. v. DNR*, 144 Wis. 2d 499, 502 n.2, 424 N.W.2d 685 (1988) (holding that "just because a party has requested and been granted an administrative hearing, the party does not obtain thereby the standing to challenge the resulting administrative decision," even though the party disagreed with the resulting administrative decision). For instance, in *Wisconsin Employment Relations Commission v. City of Evansville*, a municipality appealed an agency's decision to set aside union election results due to the municipality's engagement in prohibited practices prior to the election. 69 Wis. 2d 140, 167–68, 230 N.W.2d 688 (1975). The municipality (naturally) disagreed with the agency's decision. Even so, this court held that the municipality was not a "party aggrieved" by the agency decision because it remained "in the same position as it did prior to the election"—i.e., it was not injured by the agency's decision. *Id.* Brown offers no reason to part ways with that reasoning here. Indeed, he

---

[8] In contrast, WIS. STAT. § 68.13 provides for judicial review of municipal decisions and states that "any party to a proceeding resulting in a final determination may seek review thereof . . . ." Brown essentially asks the court to read § 5.06(8) as if it were worded like § 68.13, with the phrase "aggrieved by an order" excised.

remains in the same uninjured position as he was prior to witnessing the August 2022 absentee voting procedures.

¶24    For these reasons, we decline to interpret WIS. STAT. § 5.06(8) to mean that a complainant who receives an adverse decision from WEC is necessarily "aggrieved by an order" and thus may appeal the decision to a circuit court. We are aware that a recently published case of the court of appeals, *Hess v. WEC*, 2024 WI App 46, 413 Wis. 2d 285, 11 N.W.2d 201, may be read to say that a complainant is automatically aggrieved within the meaning of § 5.06(8) when WEC dismisses her or his complaint, regardless of injury. Yet in that decision the court of appeals did not draw upon the well-accepted meaning of "aggrieved" from our case law. We therefore overrule *Hess* to the extent that it holds any complainant whose complaint is dismissed is aggrieved under § 5.06(8).

¶25    In sum, we interpret § 5.06(8) to give effect to each word in the statutory text. "Aggrieved" is a term of art that we have consistently said requires an injury to a legally recognized interest when used in a statute governing appeals. We take care to reiterate that the bar for demonstrating injury is low. *See Milwaukee Brewers*, 130 Wis. 2d at 65. Here, because Brown has not shown that WEC's decision caused him any actual or threatened injury, he has not crossed that low threshold. He therefore is not a "complainant who is aggrieved by an order issued under sub. 6" and consequently does not have standing to appeal WEC's decision.[9]

## III.  CONCLUSION

¶26    The legislature provided under WIS. STAT. § 5.06(1) that "any elector" who believes her or his local election official violated the law may complain to WEC, and under § 5.06(8), any complainant who is "aggrieved by an order" issued by WEC under § 5.06(6) may appeal to the circuit court. Under those statutes, Brown was permitted to file a complaint with WEC, but because he was not "aggrieved by an order" issued under § 5.06(6), he does not have standing to seek judicial review of

---

[9] Because we decide the case based on standing, we do not reach the merits of Brown's complaint. *See Tri-State Home Imp. Co. v. LIRC*, 111 Wis. 2d 103, 105–06, 330 N.W.2d 186 (1983).

WEC's decision. We therefore reverse the decision of the circuit court and remand with instructions to dismiss.

*By the Court.*—The judgment and order of the circuit court is reversed, and the cause is remanded.

ANNETTE KINGSLAND ZIEGLER, C.J., dissenting.

¶27 In her dissent, Justice Rebecca Grassl Bradley raises a host of important points regarding the proper interpretation of WIS. STAT. § 5.06(8), and the word "aggrieved" in particular. *See, e.g.*, Justice Rebecca Grassl Bradley's dissent, ¶42 (noting that § 5.06(2) "expressly contemplates judicial review, but only after 'disposition of the complaint by the commission' or if [the Wisconsin Elections Commission] simply ignores the complaint altogether"). But it is unnecessary to determine the precise meaning of the term "aggrieved," as used in § 5.06(8), in this case. As Justice Rebecca Grassl Bradley rightly observes, Brown has standing—even under the majority's interpretation of § 5.06(8)—because Brown "has a legal right protected by . . . § 5.06 to have local election officials in his area comply with the law" and "[t]he Racine County Clerk's alleged failure to conduct an election in accordance with WIS. STAT. § 6.855(1) harmed that legal right." Justice Rebecca Grassl Bradley's dissent, ¶43.[1] No additional analysis is required. Accordingly, I join ¶¶43–44 of her dissent.

---

[1] *See also Teigen v. WEC*, 2022 WI 64, ¶¶32 n.16, 34, 403 Wis. 2d 607, 976 N.W.2d 519 (lead opinion); *id.*, ¶164 (Hagedorn, J., concurring) ("According to [WIS. STAT. § 5.06(1)], if local election officials in the area where a voter lives violate election laws, the voter is empowered to have that conduct abated. This establishes not only a process to compel compliance with the law, but also a legal right held by the voter to have their local election officials follow the law." (footnotes omitted)).

Rebecca Grassl Bradley, J., with whom Annette Kingsland Ziegler, C.J., joins with respect to ¶¶43-44, and Brian Hagedorn, J., joins with respect to ¶¶28-43, dissenting.

¶28    "Well, I got to hand it to you, George. You sure got a talent for trivializing the momentous and complicating the obvious. You ever consider running for Congress?"

Gettysburg (New Line Cinema 1993).

¶29    Wisconsin law provides a straightforward statutory mechanism by which a voter may file a complaint with the Wisconsin Elections Commission (WEC) alleging an election official in the voter's jurisdiction or district has failed to act in accordance with the law. Wis. Stat. § 5.06(1). The statute empowers WEC to investigate, conduct a hearing, and decide the matter under procedures specified in § 5.06(1)–(7). Unsurprisingly, the losing party has a right to appeal the decision: Under § 5.06(8), "Any election official or complainant who is aggrieved by an order issued [by WEC] may appeal the decision of the commission to circuit court for the county where the official conducts business or the complainant resides no later than 30 days after issuance of the order."

¶30    Kenneth Brown filed a complaint alleging the City of Racine's municipal clerk (the Racine City Clerk) conducted the August 2022 primary election in violation of various provisions of Wis. Stat. § 6.855 and other laws governing alternate absentee ballot sites. After WEC dismissed his complaint, Brown appealed to the Racine County Circuit Court, in accordance with § 5.06(8). The circuit court upheld WEC's dismissal of three of Brown's claims and reversed WEC on two. WEC and the Racine City Clerk appealed, additional parties intervened, and Brown cross-appealed. This court granted petitions to bypass the court of appeals.

¶31    WEC and two intervenors argued Brown lacks standing. The majority agrees and neglects to decide whether the Racine City Clerk designated and operated absentee voting sites in violation of Wisconsin law. In committing this error, the majority grafts provisions from a different chapter of the Wisconsin Statutes onto Wis. Stat. § 5.06(8), overrides the legislative determination that any voter has standing to challenge an election official's action or inaction in the voter's jurisdiction, and guts the People's right of access to the courts in election law matters,

elevating WEC to a status unrecognizable under the Wisconsin Constitution: An unreviewable Supreme Court of Election Law.

¶32    While the members of the majority apparently prefer this scheme, it is not their prerogative to impose it. The people of Wisconsin constitutionally conferred the right to prescribe the manner of conducting elections on their legislative representatives—not their judges. WISCONSIN CONST. ART. III, § 2, ART. IV, § 1. If a local election official fails to follow the law, the legislature authorizes citizens to complain—first to WEC, and then to the courts if WEC disagrees or fails to act altogether. The majority adds hurdles the legislature imposed in other laws but not in this one. As a result, Brown's complaint dies with WEC, unreviewed by the judiciary, and the People are left, once again, without a decision on fundamental issues of election law enacted to protect their sacred right to vote.

¶33    Walking through the text of WIS. STAT. § 5.06, rather than digressing onto the inapplicable path of Chapter 227 as the majority does, showcases how the majority unlawfully strips Brown of standing. WISCONSIN STAT. § 5.06(1) says, in full:

> *Whenever any elector of a jurisdiction* or district served by an election official *believes that a decision or action of the official or the failure of the official to act* with respect to any matter concerning nominations, qualifications of candidates, voting qualifications, including residence, ward division and numbering, recall, ballot preparation, election administration or conduct of elections *is contrary to law, or the official has abused the discretion vested in him or her by law* with respect to any such matter, *the elector may file a written sworn complaint with the commission* requesting that the official be required to conform his or her conduct to the law, be restrained from taking any action inconsistent with the law or be required to correct any action or decision inconsistent with the law or any abuse of the discretion vested in him or her by law. *The complaint shall set forth such facts as are within the knowledge of the complainant to show probable cause to believe that a violation of law or abuse of discretion has occurred or will occur*. The complaint may be accompanied by relevant supporting documents. *The commission may conduct a hearing on the matter in the manner prescribed for treatment of contested cases under ch. 227* if it believes such action to be appropriate.

(emphasis added). This subsection entitles "any elector of a jurisdiction" to "file a written sworn complaint with" WEC whenever that elector "believes that a decision or action" of "an election official" in the elector's jurisdiction "or the failure of the official to act" with respect to "any matter concerning" election administration "is contrary to law" or "the official has abused the discretion vested in . . . her by law . . . ." The majority seemingly agrees, declaring "the statute provides a means for an individual elector to file a complaint with WEC when she or he believes that a local election official's decision is 'contrary to law' or that the official has 'abused the[ir] discretion.' [sic]" Majority op., ¶19 (alteration in original). According to the majority, however, a voter's right to ensure that election officials follow the law ends with WEC unless he shows "that WEC's decision caused him [] actual or threatened injury." Majority op., ¶25. The statute doesn't say that.

¶34   WISCONSIN STAT. § 5.06(8) reads, in full:

Any election official or complainant who is aggrieved by an order issued under sub. (6) may appeal the decision of the commission to circuit court for the county where the official conducts business or the complainant resides no later than 30 days after issuance of the order. Pendency of an appeal does not stay the effect of an order unless the court so orders.

The majority says a "complainant who is aggrieved" by an adverse decision of WEC is not the same as the elector who files a complaint with WEC and loses. Majority op., ¶20. If the majority's conclusion sounds ridiculous, that's because it is.

¶35   The majority declares "'[a]ggrieved' is a term of art often used in Wisconsin statutes granting parties the right to appeal certain decisions[,]" citing Chapter 227, and concludes "such language is to be interpreted consistently across statutes." Majority op., ¶13. The majority doesn't disclose that Chapter 227 defines "person aggrieved" to mean "a person or agency whose substantial interests are adversely affected by a determination of an agency." WIS. STAT. § 227.01(9). As the majority acknowledges, WIS. STAT. § 5.06 does not define "aggrieved." Majority op., ¶15. The legislature, however, did not import Chapter 227's definition of "person aggrieved" into § 5.06. Notably, the legislature *did* incorporate certain provisions from Chapter 227 into § 5.06. For example, § 5.06(1) permits WEC to "conduct a hearing on the matter in the manner

prescribed for treatment of contested cases under ch. 227" and § 5.06(9) instructs the circuit court reviewing WEC's determination to accord "due weight to the experience, technical competence and specialized knowledge of the commission, pursuant to the applicable standards for review of agency decisions under s. 227.57." Nowhere in § 5.06, however, did the legislature incorporate Chapter 227's definition of "aggrieved," and the majority's decision to do so flouts § 227.03(6)'s contrary instruction: "Orders of the elections commission under s. 5.06 (6) are not subject to this chapter."

¶36　Even if the majority had the authority to revise § 5.06 with a definition of "aggrieved" from another statute (it doesn't), the majority doesn't use Chapter 227's definition anyway. Instead, the majority applies a judicially crafted definition of "aggrieved" to mean "an individual must suffer an injury to a legally recognized interest as a result of the decision." Majority op., ¶4. Confusingly, the majority insists it is "interpret[ing] aggrieved to mean the same as what it means in other statutes . . . ." *Id.*, ¶15. Of course, that isn't true, since (as just one example) Chapter 227 defines "aggrieved" to mean something other than what the majority says its means.[1]

¶37　Perhaps the majority means to apply the canon of statutory interpretation commonly known as the presumption of consistent usage. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning."). Applying that canon across the entire corpus of the Wisconsin Statutes, however, is improper for obvious reasons. "[T]he presumption of consistent usage can hardly be said to apply across the whole *corpus juris* . . . : '[T]he mere fact that the words are used in each instance is not a sufficient reason for treating a decision on the meaning of the words of one statute as authoritative on the construction of another statute.'" *Id.* at 172–73 (quoting RUPERT CROSS, PRECEDENT IN ENGLISH LAW 192 (1961)) (alteration in original).

---

[1] The corpus of Wisconsin Statutes is replete with definitions of "aggrieved" different from the definition the majority crafts. *See, e.g.*, WIS. STAT. §§ 9.01(1)(a)5, 66.1011(1m)(a), 68.06, 93.90(5)(a), 106.50 (1m)(b), and 968.27(1).

¶38 Even if "aggrieved" really were a term of art to be given the same meaning across the statutory corpus as the majority sweepingly declares, it would not carry the meaning the majority assigns it. "Every field of serious endeavor develops its own nomenclature—sometimes referred to as *terms of art* . . . . [W]hen the law is the subject, ordinary legal meaning is to be expected . . . ." *Id.* at 73. What the majority in this case overlooks, "perhaps because it failed to consult a law dictionary," is that "aggrieved" as a term of art "has traditionally borne precisely the meaning that" the majority "disclaim[s]." *Id.* at 75: Aggrieved: "having legal rights that are adversely affected," BLACK'S LAW DICTIONARY 83 (11th ed. 2019). WISCONSIN STAT. § 5.06(1) gives voters a legal right to file a complaint against a local election official whenever a voter believes the official is failing to administer or conduct elections in accordance with the law. When WEC dismisses such a complaint without taking action to correct the official's conduct, the voter's legal right is adversely affected—the voter is aggrieved—and the voter may challenge WEC's decision in a court of law as § 5.06(8) says.

¶39 Resort to dictionaries, or irrelevant cases interpreting inapplicable statutes, is entirely unnecessary, however. WISCONSIN STAT. § 5.06(8) quite obviously grants the losing party—voters and election officials alike—access to judicial review of WEC's decision. As the court of appeals concluded in a published opinion addressing analogous circumstances and interpreting the same statutory provisions we construe in this case, a voter "filed a verified complaint with WEC under WIS. STAT. § 5.06(1) . . . . WEC subsequently investigated her complaint and issued a decision dismissing her complaint under § 5.06(6). *Clearly*, Hess qualifies as 'a complainant who is aggrieved by an order issued under sub. (6).' Sec. 5.06(8)." *Hess v. WEC*, 2024 WI App 46, ¶18, 413 Wis. 2d 285, 11 N.W.3d 201 (emphasis added).[2] The statute is plain as day, as the court of appeals appreciated: "The statute *plainly* states 'an election official' or a 'complainant,' and after having filed a verified complaint with WEC under Sec. 5.06 and having received an unfavorable decision from WEC on that complaint, Hess *clearly* meets the qualifications of the statute as a complainant aggrieved by WEC's decision." *Id*. (emphasis added).

---

[2] Wisconsin Court of Appeals Judge Pedro A. Colón authored the opinion, joined by Chief Judge Maxine A. White and Presiding Judge M. Joseph Donald.

¶40    The majority dismissively overrules *Hess* because "the court of appeals did not draw upon the well-accepted meaning of 'aggrieved' from our case law." Majority op., ¶24.    Why would it? "Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). Our cases aren't law; they merely expound it, and only one case "drew upon" standing in the context of Wis. Stat. § 5.06—*Teigen*—which the majority ignores. *See generally Teigen v. WEC*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519. The majority sidesteps the plain language of the text in favor of its own, elects to "discover hidden meanings" in § 5.06, and produces a "gratuitously roundabout and complex" interpretation at odds with our recent precedent. Scalia & Garner, *supra*, at 69–70.[3]

¶41    None of the majority's language appears in Wis. Stat. § 5.06, nor may it be reconciled with § 5.06(1) or (2). For starters, the majority doesn't even attempt to address the glaring incongruity in construing § 5.06 to mean the legislature expressly authorized voters to challenge the actions of their local election officials under § 5.06(1)—regardless of whether a complaining voter is personally injured or not—but made WEC the sole arbiter of the law, shielding WEC's decision from judicial review unless the voter later demonstrates he somehow sustained some personal injury the majority neglects to define. Under the majority's dissonant

---

[3] The majority's standing analysis is also at odds with the standing policy three of its members proffered in *Friends of Black River Forest v. Kohler Company*, 2022 WI 52, ¶50, 402 Wis. 2d 587, 977 N.W.2d 342, in which Justice Jill J. Karofsky, joined by Justices Ann Walsh Bradley and Rebecca Frank Dallet, dissented. In that case, the dissenters accused the court of "prefer[ring] to slam shut the courthouse doors" and protested that "[m]embers of the public need not sit idly by when a state agency may have transgressed the very laws designed to protect their interests." *Id.*, ¶¶50, 52. According to these dissenters, alleging injuries to "aesthetic, conservational, and recreational interests" in park lands suffices to establish standing, but alleging injuries to the People's right to free and fair elections does not. *See id.*, ¶¶79, 83. As the dissenters wrote then, "[n]ot only is that result absurd, it betrays the broad cause of action the legislature endowed on citizens to challenge such lawless agency behavior in court." *Id.*, ¶89.

dichotomy between the voter who files a complaint with WEC and the voter who is "aggrieved" by WEC's adverse decision in some fashion imagined by the majority, a complainant can only guess whether he will receive the judicial grace now necessary to access the courts. The complexity the majority injects into § 5.06(8) cannot be squared with the legislature's unequivocal conferral of the right to sue under § 5.06(1).

¶42 The majority's interpretation cannot be reconciled with WIS. STAT. § 5.06(2) either, which explicitly contemplates a complainant taking his case to circuit court after WEC disposes of the complaint adversely or by inaction:

> No person who is authorized to file a complaint under sub. (1), other than the attorney general or a district attorney, may commence an action or proceeding to test the validity of any decision, action or failure to act on the part of any election official with respect to any matter specified in sub. (1) without first filing a complaint under sub. (1), nor prior to disposition of the complaint by the commission. A complaint is deemed disposed of if the commission fails to transmit an acknowledgment of receipt of the complaint within 5 business days from the date of its receipt or if the commission concludes its investigation without a formal decision.

As the majority seems to recognize, this provision prevents a complainant from bypassing WEC and filing with the circuit court first, but the majority wrongly contends "it bears no textual or conceptual connection to whether an individual is aggrieved such that he . . . has standing to appeal." Majority op., ¶20 n.6. To the contrary, this subsection expressly contemplates judicial review, but only after "disposition of the complaint by the commission" or if WEC simply ignores the complaint altogether: "A complaint is deemed disposed of if the commission fails to transmit an acknowledgment of receipt of the complaint within 5 business days from the date of its receipt." § 5.06(2). Under the majority's construction of the statutes, the complainant could not file his complaint in the circuit court despite WEC's failure to decide the matter, unless the complainant shows "that WEC's decision caused him any actual or threatened injury." In that situation, however, there is no decision—just a deemed disposition because of WEC's inaction.

7

¶43 Even if "aggrieved" in § 5.06(8) means what the majority injects into the text, Brown clears the majority's hurdles because he alleged "an injury to a legally recognized interest" resulting from WEC's refusal to remedy the Racine County Clerk's violations of Wisconsin election law. Brown has a legal right protected by WIS. STAT. § 5.06 to have local election officials in his area comply with the law. The Racine County Clerk's alleged failure to conduct an election in accordance with WIS. STAT. § 6.855(1) harmed that legal right. Because WEC's decision failed to compel the clerk to conduct elections in accordance with WIS STAT. § 6.855(1), Brown has standing to seek judicial review.

¶44 While the majority overrides the statutory text in favor of a policy-driven approach to standing, its analysis conflicts with governing precedent, under which "standing in Wisconsin is not a matter of jurisdiction, but of sound judicial policy." *McConkey v. Van Hollen*, 2010 WI 57, ¶15, 326 Wis. 2d 1, 783 N.W.2d 855 (2010). "The law of standing in Wisconsin is construed liberally, and 'even an injury to a trifling interest' may suffice." *Id.* (quoting *Fox v. DHSS*, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983)). Wisconsin's judicial standing policy endeavors to "ensur[e] that the issues and arguments presented will be carefully developed and zealously argued." *Id.*, ¶16 (citing *Moedern v. McGinnis*, 70 Wis. 2d 1056, 1064, 236 N.W.2d 240 (1975)). The majority can't credibly suggest this case suffered from inadequate arguments or deficient briefing. Dismissing a case without deciding its merits, especially after the court bypassed the court of appeals, not only flouts the statutory text, it constricts Wisconsin's decades-old precedent on standing beyond recognition.

¶45 The heart of the majority's error lies in its refusal to give effect to the legislature's conferral in WIS. STAT. § 5.06(1) of the legal right of every voter "to have local election officials in the area[s] where [they] live[] comply with election laws" as four justices agreed in *Teigen*, 403 Wis. 2d 607, ¶34 (lead op.) (quoting ¶164 (Hagedorn, J., concurring)).[4] A

---

[4] Although Justice Brian Hagedorn did not join ¶34 of the majority/lead opinion in *Teigen*, if "a majority of the participating judges [] have agreed on a particular point" it is "considered the opinion of the court." *State v. Elam*, 195 Wis. 2d 683, 685, 538 N.W. 2d 249 (1995) (citing *State v. Dowe*, 120 Wis. 2d 192, 194–95, 352 N.W.2d 660 (1984) (per curiam)). While three justices in *Teigen* disagreed with Justice Hagedorn's argument that WIS. STAT. § 5.06(1) conferred standing on voters to challenge WEC*'s* actions, all four justices agreed that

new majority only now denies the existence of the right conferred in § 5.06(1) and says Brown must instead "allege that WEC's decision personally affected him" and show "that he has personally suffered (or will suffer) an injury as a result of WEC's decision." Majority op., ¶16. While this same majority overturned *Teigen* in *Priorities USA* a few months ago, it did so on a different question altogether, leaving *Teigen*'s standing analysis intact. *See generally Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429. Regardless, Brown had no opportunity to conform his pleadings to the majority's erosion of the right conferred in § 5.06 because the majority overturned *Teigen* nearly two years *after* Brown filed his complaint with WEC. *Id.*

¶46 The majority's failure to follow inconvenient precedent leaves litigants in the painful position of Charlie Brown naively relying upon Lucy's insincere promise to hold the football steady for his kick, only to find himself flat on his back after Lucy pulls the ball away. It is for this reason that most judges through the ages have respected the "established rule to abide by former precedents, where the same points come again in litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion." 1 WILLIAM BLACKSTONE, COMMENTARIES 69 (3rd ed. 1768). Peculiar thing about precedent, if this majority doesn't agree with the opinion, it's as worthless as Lucy's signed but unnotarized document.[5]

\* \* \*

¶47 The majority complicates the plain language of a statute, leaving Brown with no judicial avenue for vindicating his right to require his local election official to conform her conduct to the law. A "right that lacks a vehicle for vindication is a hollow one." *Teigen*, 403 Wis. 2d 607, ¶32 n.16 (lead op.). The majority's denial of access to one voter extends far beyond Brown; it impacts all Wisconsin citizens. "Elections are the foundation of American government and their integrity is of such monumental importance that any threat to their validity should trigger not only our concern but our prompt action." *Trump v. Biden*, 2020 WI 91,

---

statute gives voters a right to have local election officials comply with election laws, and the majority/lead opinion embraced Justice's Hagedorn's expression of the principle.

[5] *It's the Great Pumpkin, Charlie Brown* (CBS 1966).

¶152, 394 Wis. 2d 629, 951 N.W.2d 568 (Rebecca Grassl Bradley, J., dissenting) (citations omitted).

¶48 Brown claims five serious breaches of Wisconsin law by the Racine City Clerk in conducting an election, and the circuit court agreed with Brown on two of those claims. Brown observed absentee ballots being cast at one of several alternate sites, which he asserts unlawfully afforded an advantage to a political party and were not as "near as practicable" to the municipal clerk's office as WIS. STAT. § 6.855(1) requires. Additionally, Brown asserts the (literal) vehicle for receiving absentee ballots violated Wisconsin statutes requiring the use of a fixed, secure building. Fourth, Brown asserts designating an office located within City Hall, near the Racine City Clerk's Office, as an alternate site violated § 6.855(1) because it was merely an extension of the clerk's office. Finally, Brown asserts the Racine City Clerk operated the alternate sites for unreasonably short durations (e.g., for three hours on a single day) in violation of § 6.855(1). The majority's decision to skirt the merits trivializes the momentous role free and fair elections play in the preservation of our Republic. "Electoral outcomes obtained by unlawful procedures corrupt the institution of voting, degrading the very foundation of free government." *Teigen*, 403 Wis. 2d 607, ¶25 (lead op.).

¶49 The majority, once again, refashions the law to its own liking as it shuts the doors of the courthouse to voters with colorable legal claims. Perhaps the majority prefers the prerogatives of the legislature to the duties of the judiciary but the Wisconsin Constitution does not permit this branch to reallocate the powers the People conferred on their elected officials.